692 S.E.2d 916

**In the Matter of Roger Paul ROY, Jr., Respondent.**

**No. 26815.**

Supreme Court of South Carolina.

Heard March 4, 2010.

Decided May 3, 2010.

Lesley M. Coggiola, Disciplinary Counsel, and William C. Campbell, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Desa Ballard and Harvey M. Watson, III, both of Columbia, for Respondent.

PER CURIAM.

This attorney disciplinary matter arises out of Roger Paul Roy, Jr.'s (Respondent) management of his trust account and handling of his personal refinance loan closing. The Hearing Panel (the Panel) recommended Respondent be publicly reprimanded for his misconduct and assessed the costs of the proceedings. Both the Office of Disciplinary Counsel (the ODC) and Respondent object to the Panel's recommendation. However, we agree with the Panel's recommendation.

## FACTS/PROCEDURAL BACKGROUND

Respondent's law practice handles a relatively large amount of real estate transactions, in addition to other matters. On October 19, 2006, Respondent refinanced the mortgage on his home and handled the closing himself.

While negotiating the refinance, Respondent obtained a payoff amount over the telephone from the original lender. This oral payoff amount did not include a prepayment penalty. A written payoff statement was sent, but did not arrive until after the closing. Thus, Respondent closed his refinance loan without a written payoff statement from the original lender. In total, approximately $658,000 was received from the refinance lender and deposited into Respondent's trust account.

On October 24, 2006, checks were distributed from the trust account: $492,119.42 to pay off the original lender's mortgage; $63,324.45 to pay off what appears to be an additional prior mortgage with the refinance lender; $98,516.57 was excess cash to close and was paid to Respondent and his wife; the remaining several thousand dollars were disbursed by checks written to cover various fees and costs associated with the closing. The $492,119.42 check to the original lender was rejected because it did not include a prepayment penalty that was due under the terms of the mortgage.

For the next year, Respondent attempted to negotiate a new payoff amount with the original lender. Respondent continued making the monthly payments of $3,400 on the original mortgage, using the $492,119.42 in his trust account. During this time, Respondent did not inform the refinance lender that the original mortgage had not been paid off and satisfied as the terms of the refinance loan required. This

failure placed the refinance mortgage in junior priority to the original mortgage. Additionally, Respondent failed to inform his title insurance company of this irregularity. Thus, both the refinance lender and the title insurance company were exposed to unanticipated and unbargained for risk.

Respondent finally paid off the original mortgage on October 21, 2007. Because interest had continued to accrue on the original mortgage balance, Respondent had to deposit over $22,000 of his own funds into the trust account to have sufficient funds to pay off the original mortgage.

Throughout this time and into 2008, Respondent had an accountant reconciling his trust account. While he was unaware of any noncompliance at the time, Respondent admits the accountant's methods did not comply with Rule 417, SCACR. During this time, Respondent's accounting ledgers indicated that several individual client account ledgers carried negative balances. Because other client account ledgers carried sufficient positive balances to indicate an overall positive balance in the trust account, the deficiencies were not noticed during the accountant's "bank to book" reconciliations. This accounting practice effectively meant that some clients' funds were being used to cover other client's deficiencies, although no checks were returned for non-sufficient funds in the account.

Respondent contends that the accounting software insisted upon by his title insurance company caused much data to be lost during the transition and later updates. As a result of lost data, a $6,000 check was not indicated in Respondent's accounts. Once Respondent paid off the original mortgage in October 2007, there was a $6,000 shortfall. The shortfall was caught the next month during the routine reconciliation process, and Respondent promptly deposited personal funds into the account to make up the shortfall.

In September 2007, Respondent's title insurance company came for the routine audit and pronounced the trust account in complete disarray. The title company filed the complaint with the ODC, alleging Respondent's failure to properly reconcile his trust account. The ODC then brought formal charges in November 2008 and Respondent replied to those charges in December 2008.

The Panel found violations of the following rules: Rule 417, SCACR, for failing to reconcile and adequately maintain accounting of his financial records; Rule 1.1 Competence, for failing to competently conduct the refinance; Rule 1.15 Safeguarding Property, for failing to safeguard both the proceeds of the refinance and the lien position of the refinance lender's new mortgage, and client funds in his trust account; and Rule 8.4 Misconduct, by his continuing failure to resolve the original mortgage payoff for nearly one year and for failing to properly reconcile his trust account and individual client account ledgers. The Panel recommended Respondent be given a public reprimand and be ordered to pay the costs of the disciplinary proceedings.

The ODC takes exception to this recommendation, urging that the serious nature of these violations requires a more serious sanction, even though no clients were injured and Respondent is currently in compliance with the Rules. Respondent also takes exception to the Panel's recommendation, asserting that the facts do not warrant a public sanction, and that a private sanction would be most appropriate, given Respondent's standing in the legal community and lack of prior disciplinary history.

### STANDARD OF REVIEW

The sole authority to discipline attorneys and decide appropriate sanctions after a thorough review of the record rests with this Court. *In re Thompson*, 343 S.C. 1, 10–11, 539 S.E.2d 396, 401 (2000). In such matters, this Court may draw its own conclusions and make its own findings of fact. *Id.* Nonetheless, the findings and conclusions of the Panel are entitled to much respect and consideration. *Id.*

### ANALYSIS

Respondent urges that the Panel's recommended public sanction is too severe given the facts of this case. We disagree.

"This Court has made it abundantly clear that an attorney is charged with a special responsibility in maintaining and preserving the integrity of trust funds." *In the Matter of Houston*, 382 S.C. 164, 167, 675 S.E.2d 721, 723 (2009) (citation

omitted). The facts of *In the Matter of Houston* are similar to this case. In that case, the attorney failed to properly comply with the record-keeping requirements of the Rules of Professional Conduct. *Id.* at 166, 675 S.E.2d at 722–23. Like in this case, no clients were harmed and no funds were misused. *Id.* at 167, 675 S.E.2d at 723. The attorney failed to keep proper records of the money going through the trust account, but already had taken corrective measures by the time this Court heard the case. *Id.* Nonetheless, this Court, taking into consideration the severity of the misconduct, ordered the attorney be given a public reprimand, obtain the assistance of a certified public accountant, attend four hours of CLEs, and pay the costs of the proceedings. *Id.* at 167–68, 675 S.E.2d at 723.

Here, Respondent admits that he failed to properly reconcile his trust account for more than two years. By failing to keep proper financial records in accordance with the Rules of Professional Conduct, Respondent opened his clients to an inexcusable risk of harm. Additionally, his improper handling of his refinance exposed both his refinance lender and title insurance company to significant risk as the refinance lien was unprotected and in a secondary position throughout the eleven months Respondent attempted to negotiate a new payoff amount.

Further, over the eleven months Respondent was making the monthly payment on the original mortgage, he depleted the funds entrusted to him for payment of the original mortgage in excess of $28,000. Thus, Respondent was effectively using his clients' funds to meet his personal repayment obligations. Respondent deposited over $22,000 of his personal funds into the trust account to meet the final payoff amount for the original mortgage. Afterwards, he noticed there was still a $6,000 shortfall in the trust account, so he deposited the amount necessary to bring it into balance. If Respondent had simply paid off and satisfied the original mortgage upon closing the refinance loan, as he was obligated to, this shortfall would not have occurred.

Although no clients complained, no client funds were lost or intentionally misappropriated, and the account was never overdrawn throughout this period, it appears to be mere

378

fortuitous happenstance that no actual harm was caused. Accordingly, we find a public sanction is an appropriate sanction under these circumstances.

## CONCLUSION

We adopt the Panel's recommendations and hereby publicly reprimand Respondent and order him to pay the costs of this action within ninety days of the filing of this opinion.

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.